

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: April 15, 2021.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 7 CASE** |
| | § | |
| | § | |
| **WALTER GEORGE BUSBY and** | § | **CASE NO. 19-50725-CAG** |
| **DEANN LOUISE BUSBY,** | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| **KEVIN M. EPSTEIN, UNITED STATES** | § | |
| **TRUSTEE,** | § | |
| Plaintiff. | § | |
| | § | |
| **v.** | § | **ADV. NO. 19-05051-CAG** |
| | § | |
| **WALTER GEORGE BUSBY and** | § | |
| **DEANN LOUISE BUSBY,** | § | |
| Defendants. | § | |

## MEMORANDUM OPINION ON COMPLAINT OBJECTING TO DISCHARGE OF THE DEBTORS

This Memorandum Opinion resolves adversary proceeding *Kevin M. Epstein, United States Trustee v. Walter George Busby and Deann Louise Busby*, Adv. No. 19-05051-CAG. On January

1

29, 2021, this Court concluded a one-day trial before taking the matter under advisement. Thereafter, the Court reviewed the entire record before it, including all admitted exhibits, briefs, and deposition excerpts. The Court also considered the testimony and credibility of all witnesses. Additionally, the Court considered all evidentiary objections raised and sustained in making its findings of fact.

## JURISDICTION

As an initial matter, the parties have stipulated to, and the Court finds, it has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. (ECF Nos. 18 and 21) [1]; *see also Wellness Int'l Network, Ltd. v. Sharif (In re Sharif)*, 575 U.S. 665, 684 (2015) (finding bankruptcy courts have constitutional authority to enter a final order when the parties consent). This matter is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. § 1409(a). This matter is referred to the Court pursuant to the District Court's Standing Order of Reference. The Court makes its findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

On April 1, 2019 (the "Petition Date"), Walter and DeAnn Busby ("Debtors", "Defendants", or "Busbys") filed a voluntary Chapter 7 petition for relief with their initial Schedules ("Initial Schedules") and Statement of Financial Affairs ("Initial SOFA"). (Case No. 19-50725-CAG, ECF No. 1). On April 25, 2019, Defendants filed their Amended Schedules and Amended SOFA. (Case No. 19-50725-CAG, ECF No. 10). Defendants testified under oath at the May 9, 2019 meeting of creditors that they read the Amended Schedules and Amended SOFA before signing them and that they were true and correct to the best of their knowledge. Defendants

---

[1] "ECF" denotes the electronic case filing number in this Adversary Proceeding unless otherwise noted.

further testified that the Schedules as amended listed all their assets and liabilities. The Chapter 7 Trustee adjourned the meeting of creditors to June 20, 2019, and subsequently to August 15, 2019.

On June 20, 2019, Defendants filed their Second Amended SOFA. (Case No. 19-50725-CAG, ECF No. 19). Defendants appeared at the August 15, 2019 meeting of creditors with counsel. The Chapter 7 Trustee adjourned the meeting of creditors to September 12, 2019. On September 10, 2019, Defendants filed the Second and Third Amended Schedules and the Third Amended SOFA. (Case No. 19-50725-CAG, ECF Nos. 37 and 38). In all instances, before filing any Amended Schedules or SOFAs, Defendants signed the Statement declaring under penalty of perjury that they had read the answers to the questions therein and that they were true and correct.

The United States Trustee ("Trustee" or "Plaintiff") seeks a denial of Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(a), (a)(5).[2]

## I.      The Parties' Contentions

In summary, Plaintiff alleges Defendants should be denied their discharge in Bankruptcy Case No. 19-50725-CAG because within one year before the date of the filing of the petition, Defendants either transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed property with the intent to hinder, delay, or defraud creditors. Further, after Defendants filed their petition, Plaintiff alleges Defendants either transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed property with the intent to hinder, delay, or defraud creditors.

Plaintiff also alleges Defendants knowingly and fraudulently made false oaths and accounts in Bankruptcy Case No. 19-50725-CAG. Plaintiff argues Defendants failed to keep or preserve records from which their financial condition or business transactions might be ascertained; and

---

[2] Unless otherwise noted, all references are to Title 11, U.S.C. *et seq.*

Defendants have not satisfactorily explained the loss of assets or deficiency of assets to meet their liabilities. Defendants deny these allegations and have alleged Defendants made full and timely disclosure of all material items they knew of or were asked by the Chapter 7 Trustee or Plaintiff. Defendants maintain that they had no intent to defraud the creditors or anyone else.

## FINDINGS OF FACT

### I.    Stipulated Facts

On August 25, 2020, the Parties submitted a Joint Pre-Trial Order with their statement of stipulated facts which the Court now adopts. (ECF No. 37, §§ 5.1–5.49).

### II.   Findings of Fact (Summary of the Oral Testimony)[3]

**Walter Busby**

Walter Busby is a resident of San Antonio, Texas and has a homestead he shares with his wife with an appraised value of roughly $1 million. Busby stated that his mortgage is $5,500.00 per month and that he is approximately eight months delinquent on mortgage payments. He is a graduate of St. Mary's University in San Antonio and a CPA. Walter Busby has extensive work and business experience, having worked for Arthur Young and Lincoln Property Co. He has been a real estate broker since 2012 and has been active in commercial real estate since the 1990's.

Walter Busby acknowledged that, through Central Texas Realty & Development, LLC ("CTRD"), he received a real estate commission of $820,000.00 in 2016. Busby said part of the commission was used to pay taxes and living expenses. Busby also paid Stephen Sanders (a HUD commercial developer) $393,000.00 from the $820,000.00 commission as an advance for commissions for HUD commercial developments that Sanders was pursuing (referred to hereinafter as "Agreement To Share Commissions"). Busby explained that he paid the commission

---

[3] The Parties stipulated to the admission of Trustee's Exhibits 1–23 and used Trustee's Exhibits 1–23 as joint exhibits. The summary of testimony is in addition to stipulated facts.

to Sanders because Sanders is a HUD approved developer and Busby wanted to pursue HUD commercial development projects. Busby is not a qualified HUD developer. Walter Busby stated that there is no documentation regarding this transaction or the $40,000.00 he paid Sanders for a prior loan.[4] Further, Busby testified that it took multiple bankruptcy amendments to disclose the transactions with Sanders. Busby explained that he made this arrangement with Sanders because of potential HUD commercial developments in South Texas and the potential payment to him of fees. Busby argued that he did not have to disclose the Agreement To Share Commissions because there was no partnership with Sanders. Moreover, Walter Busby observed that he did not get a K-1 from the purported partnership with Sanders. Busby also stated that ordinarily a commercial transaction such as the one with Sanders would not be documented until an equity partner was identified. Busby explained that generally HUD commercial developments require an equity partner(s) to make a 24-28% equity commitment to fund the development before it is documented.

Walter Busby testified that the sale of firearms to his son-in-law Jeffrey Swift was first documented as a gift and later disclosed as a sale after the Schedules and SOFA were amended multiple times. Busby testified that he collected firearms for roughly 35 years and that the sale of firearms to his son-in-law was necessary because he needed cash to pay for living expenses. Busby also agreed that he sold musical equipment to third parties, and those sales were not disclosed on any iteration of the Schedules or SOFA. Busby indicated that he deferred to Mrs. Busby for the sale of these items because she had an eBay account and they needed cash to pay living expenses.[5]

---

[4] The Chapter 7 Trustee also testified briefly at trial. The Chapter 7 Trustee stated that he conducted the meetings of creditors, rescheduling them to get further information and amendments from Defendants. The Chapter 7 Trustee stated that in his experience of conducting § 341 meetings, he has never seen an agreement such as the one between Walter Busby and Sanders involving a significant amount of money ($820,000.00) that was not documented.

[5] Both Walter and Deann Busby testified that their need for cash was based on a judgment taken against Walter Busby for his guarantee of a loan (the "Gallo" judgment). As a result of the judgment, a charging order was issued against the Busbys for payment that resulted in their bank accounts being frozen.

5

Busby was also examined as to the failure to disclose partnership interests and produce books and records. Busby acknowledged a certificate of formation on file with the Secretary of State indicating Walter Busby was a member/manager of R2W Development LLC was not disclosed until after the August 15, 2019 meeting of creditors. (Ex. 4). Busby stated his failure to disclose his interest in R2W Development LLC was an oversight. Busby concluded disclosing his interest in R2W Development LLC was unnecessary because it had no value and he did not receive a K-1 for his membership interest. Nevertheless, Busby acknowledged the questions on his SOFA required Busby to disclose his membership interest in R2W Development LLC. Additionally, on Part V, question 42 of Defendants' original Schedules, Defendants list 100% interest in Turner Busby Development LLC. Plaintiff and the Chapter 7 Trustee asked Defendants multiple times for the records for this entity which were never produced.

**DeAnn Busby**

DeAnn Busby has a BA and MA from Incarnate Word University. She has prior business experience working for a newspaper and mosquito companies. Mrs. Busby stated she read and signed all iterations of the Schedules and SOFA. Further, Mrs. Busby testified under oath at her meetings of creditors that her Schedules and SOFA were accurate. Mrs. Busby testified that her sale of items on eBay was not a business despite having a PayPal account tracking her sales. Mrs. Busby stated that when reporting her eBay sales on the SOFA, she did not add up the amount of the total sales. (Exs. 8, 9). Further, notwithstanding having a ledger for these sales, Mrs. Busby concluded she did need not review the ledger because she did not consider the sale of the items a business.

DeAnn Busby, like her husband, testified she did not disclose any of the sales of the musical equipment on her Schedules or SOFA. Mrs. Busby maintained she and her husband had little

income at the time of the sale of the musical equipment and the sale proceeds were used for living expenses. DeAnn Busby further explained that the Busbys had to sell these items because of a pending judgment and charging order against them and their bank accounts. DeAnn Busby also testified she had no personal knowledge regarding her husband's businesses.

Plaintiff's evidence regarding violations of § 727(a) is summarized below. The summary of evidence includes trial testimony, admitted evidence, and stipulated facts.

### A. Defendants' Schedules and Statement of Financial Affairs and Testimony at the Meetings of Creditors

On the Petition Date, Defendants filed their Schedules and SOFA. (Ex. 1). Jose C. Rodriguez was appointed interim Chapter 7 trustee (the "Chapter 7 Trustee"). Before filing their Schedules, Defendants signed the Declaration Concerning Debtors' Schedules declaring under penalty of perjury that they had read the Schedules and that they were true and correct to the best of their knowledge, information, and belief. Before filing the Statement of Financial Affairs, Defendants signed the Statement of Financial Affairs declaring under penalty of perjury that they read the answers to the questions therein and that they were true and correct.

On April 25, 2019, Defendants filed their Amended Schedules. (Ex. 2). Before filing their Amended Schedules, Defendants signed the Statement declaring under penalty of perjury that they read the summary and the Schedules and that they were true and correct. Defendants also filed the Amended SOFA on April 25, 2019. (Ex. 3). Before filing the Amended SOFA, Defendants signed the Statement declaring under penalty of perjury that they read the answers to the questions therein and that they were true and correct.

At the May 9, 2019 meeting of creditors, Defendants testified under oath that they read the Schedules as amended and SOFA as amended before signing them, and that they were true and

correct to the best of their knowledge. (Transcript at Ex. 17). Defendants further testified that the Schedules as amended listed all their assets and liabilities.

The Chapter 7 Trustee adjourned the meeting of creditors to June 20, 2019 (Transcript at Ex. 18), and subsequently to August 15, 2019. (Transcript at Ex. 19). On June 20, 2019, Defendants filed the Second Amended SOFA. (Ex. 3). Before filing the Second Amended SOFA, Defendants signed the Statement declaring under penalty of perjury that they had read the answers to the questions therein and that they were true and correct.

Defendants appeared at the August 15, 2019, meeting of creditors with counsel. The Chapter 7 Trustee adjourned the meeting of creditors to September 12, 2019. On September 10, 2019, Defendants filed the Second and Third Amended Schedules and the Third Amended SOFA. (Exs. 4, 5). Before filing the Second and Third Amended Schedules, Defendants signed the Declaration Concerning Debtors' Schedules declaring under penalty of perjury that they had read the Amended Schedules and Second Amended Schedules and that they were true and correct to the best of their knowledge, information, and belief. Before filing the Third Amended SOFA, Defendants signed the Statement declaring under penalty of perjury that they read the answers to the questions therein and that they were true and correct.

**B. Payments To Stephen Sanders And Agreement**

Defendant Walter Busby and Stephen Sanders ("Sanders") have been involved in multiple real estate transactions during the last ten years. On August 18, 2016, Walter Busby, through his CTRD[6] bank account at Plains Capital Bank received a real estate sales commission and expenses in the amount of $820,569.90. On August 24, 2016, Walter Busby wired funds in the amount of $40,000 to Sanders and $393,500 to Sanders' company, Sanders Family Investments, LLC

---

[6] Ex. 10 is the Texas Secretary of State Certificate of Formation for CTRD listing Walter Busby as manager.

("SFI").[7] Walter Busby testified that the Agreement To Share Commissions existed on the date of the filing of his bankruptcy case. Busby also testified that Defendants had no documentation or records concerning the Agreement To Share Commissions. After being asked about the August 24, 2016 payments of $40,000 and $393,500 to Sanders, Defendants—for the first time—disclosed the alleged Agreement To Share Commissions on the Second and Third Amended Schedules and Third Amended SOFA filed on September 10, 2019. (Exs. 4, 5).

### C. Business Disclosures

Plaintiff showed during the period of April 1, 2015, through April 1, 2019, Walter Busby was an officer, director, managing executive, partner, and/or sole proprietor of at least twenty-four business entities including R2W Development, LLC. Schedule A/B, Part 4, question No. 19, requires debtors disclose all stock and interests in incorporated and unincorporated businesses owned as of the bankruptcy filing. Defendants did not list any businesses on Schedule A/B, Part 4, question No. 19 filed on April 1, 2019. (Ex. 1). Schedule A/B, Part 5, question No. 42, requires debtors disclose all interests in partnerships or joint ventures owned as of the bankruptcy filing. Defendants disclosed multiple businesses and joint ventures on Schedule A/B, part 5, questions No. 42. Defendants did not list the Busby Sanders partnership or R2W Development, LLC.[8]

Plaintiff notes that the Statement of Financial Affairs, Question No. 27, Part 11 requires debtors list the name of the business, the nature of the business, and the employer identification number for each business a debtor owned within four years before filing bankruptcy or for which the debtor was a sole proprietor, a member of an LLC, a partner in a partnership, an officer, director, or managing executive of a corporation, or an owner with at least 5% of the voting

---

[7] CTRD's bank statements evidencing the wire transfers are Exs. 6 and 7.
[8] Walter Busby is listed as a member of R2W Development in the Certificate of Formation filed with the Texas Secretary of State. (Ex. 13).

securities of a corporation. Defendants did not list the Busby Sanders partnership or R2W Development LLC. Further, although Defendants did list Turner Busby Development LLC on their original Schedules, they never disclosed the books and records to Plaintiff after numerous requests.

After being questioned by Plaintiff's counsel at the August 15, 2019 meeting of creditors, Defendants filed their Second and Third Amended Schedules on September 10, 2019. (Exs. 4,5). The Second Amended Schedules A/B, Part 5, question No. 42 disclosed for the first time Walt Busby's agreement with Stephen Sanders as follows:

> In 2016 Walt Busby paid Steve Sanders a non-refundable $383,000 advanced commission fee for real estate deals that they could do together. Sanders was a preferred developer for HUD, which was why Busby believed the advance commission was in his best interest. Sanders and Busby ended up doing 3-4 real estate deals together. Busby hopes to continue doing business deals with Sanders but there is no recourse between the parties. There is no value to the arrangement because there is no continuing obligation of either party to keep working with the other party.

On the Second and Third Amended Schedules filed on September 10, 2019, Defendants disclose a 50% interest in the agreement with Stephen Sanders and a value of "0." After being questioned at the August 15, 2019 creditor's meeting, Defendants filed their Third Amended SOFA on September 10, 2019, to disclose for the first time the Agreement To Share Commissions and R2W Development, LLC.

### D. Transfers

Statement of Financial Affairs, Part 7, question No. 18 requires Defendants disclose all transfers of property to anyone, other than in the ordinary course of business, within two years of the bankruptcy filing. Statement of Financial Affairs, Part 9, question No. 23 requires Defendants disclose any property they hold or control that someone else owns.

Plaintiff states Defendants are not firearm dealers, and, any sales of firearms by them in the two years prior to the bankruptcy were not in the ordinary course of business. Defendants sold

firearms to their son-in-law, Jeffrey Swift, on July 31, 2018, and August 15, 2018, for a total of $13,000. Despite disclosing other sales of firearms, Defendants did not disclose the firearm sale to Swift on the Statement of Financial Affairs filed on April 1, 2019, the Amended SOFA filed on April 25, 2019, and the Second Amended SOFA filed on June 20, 2019. (Exs. 1, 2, and 3). Defendants also failed to disclose they held possession of the firearms sold to Swift on the Statement of Financial Affairs filed on April 1, 2019, the Amended SOFA filed on April 25, 2019, and the Second Amended SOFA filed on June 20, 2019.

After questioning by Plaintiff's counsel concerning the undisclosed sale of firearms at the August 15, 2019 meeting of creditors, Defendants filed their Third Amended SOFA on September 10, 2019, and disclosed on question 18 that they sold 3 guns to Swift for $13,000. (Ex. 5). Additionally, Defendants also disclosed on question No. 23 of the Third Amended SOFA that Defendants maintain custody of the firearms sold to Swift.

On June 8, 2018, Defendants sold their Gretsch guitar to Scott Wheeler for $1,925. On July 31, 2018, Defendants sold their Fender guitar to Bill Dickie for $768.99. On November 24, 2018, Defendants sold their VOX amplifier to Randy Zecchel for $797.99. On December 6, 2018, Defendants sold their Epiphone amplifier to Jeffrey Naumann for $153.98. On December 11, 2018, Defendants sold their CF Martin guitar to Charles Japhe for $1,765. Defendants did not disclose on question 18 of their Statement of Financial Affairs filed on April 1, 2019, or on any amendment, that they sold and transferred guitars and amplifiers within two years prior to the bankruptcy filing.

### E. Defendants' Records

Defendants' Schedules list assets with a value of $1,117,080 and liabilities of $2,080,240. (ECF No. 1). Defendants received a real estate commission income of $820,592.70 on August 18, 2016. On August 24, 2016, Defendants transferred $433,500 to Sanders and SFI.

Defendants reported gross income of $433,386 on their 2016 Federal Income Tax Return filed with the Internal Revenue Service. Defendants reported gross income of $244,868 on their 2017 Federal Income Tax Return filed with the Internal Revenue Service. (Exs. 14, 15). The Chapter 7 Trustee and Plaintiff's counsel asked Defendants to provide documents concerning the agreement with Sanders. Defendants testified they had no documentation or records concerning the agreement with Sanders or any financial transactions occurring under said agreement. The Chapter 7 Trustee and Plaintiff's counsel asked Defendants to provide financial records concerning Turner Busby Development, LLC that was listed on the original Schedules. Defendants testified they had no financial records concerning Turner Busby Development, LLC.

## ANALYSIS

### I.    Non-Dischargeability Under 11 U.S.C. § 727

Section 727 of the Bankruptcy Code states:

**(a)** The court shall grant the debtor a discharge, unless—

**(1)** the debtor is not an individual;

**(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

**(A)** property of the debtor, within one year before the date of the filing of the petition; or

**(B)** property of the estate, after the date of the filing of the petition;

**(3)** the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

**(4)** the debtor knowingly and fraudulently, in or in connection with the case—

**(A)** made a false oath or account;

**(B)** presented or used a false claim;

**(C)** gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

**(D)** withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

**(5)** the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727(a)(1)–(5) (West 2020).

Section 727(a) provides that a court must grant a discharge unless one or more grounds for denial of discharge under § 727(a)(1)–(12) is proven to exist. The burden of proving a denial of discharge under § 727(a)(1)–(12) lies with the party objecting to discharge, and is by a preponderance of the evidence. ***Beaubouef v. Beaubouef*, (*In re Beaubouef*)**, 966 F.2d 174, 178 (5th Cir. 1992). Here, Trustee objects to Defendant's discharge pursuant to §§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4)(A), and (a)(5). The Court addresses each of Trustee's objections to discharge in turn.

### A.    11 U.S.C. § 727(a)(2)(A)—Transfers of Firearms to Jeffrey Swift; Transfers of Music Equipment to Third Parties.

To sustain an objection under § 727(a)(2)(A), the objecting party must show: (1) the act complained of was done within the one year before the date of the filing of the petition; (2) the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done; (3) the act was committed by the debtor or a duly authorized agent of the debtor; and (4) the act was done with actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code. ***Lowry v.***

13

*Croft* (*In re Croft*), 500 B.R. 823, 851 (Bankr. W.D. Tex. 2013) (citing *Village of San Jose v. McWilliams*, 284 F.3d 785, 793–94 (7th Cir. 2002)). For purposes of analyzing what constitutes a transfer under § 727(a)(2), the definition of transfer is to be applied as broadly as possible. *Id.*

The final requirement to deny discharge under § 727(a)(2)(A) requires the act complained of must be done with intent to hinder, delay, or defraud a creditor. *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90–91 (5th Cir. 1989). Further, the intent must be actual intent and not constructive intent. *First Tex. Sav. Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 991–92 (5th Cir. 1983). That said, a finding of actual intent may be based on circumstantial evidence or inferences from a course of conduct. *Chastant*, 873 F.2d at 91; *see also, Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753–54 (9th Cir. 1985). Moreover, The Fifth Circuit has identified the following factors may provide evidence of actual intent to defraud:

> (i) a lack or inadequacy of consideration, (ii) a familial or close relationship between the parties, (iii) retention of possession, benefit, or use of the property in question, (iv) the financial condition of the party sought to be charged both before and after the transaction in question, (v) the existence or cumulative effect of a pattern or course of conduct after the incurring of a debt, onset of financial difficulties or threat of suits by creditors, and (vi) the general chronology of the events and transactions at issue.

*TSCA-234 Ltd. P'ship v. Moseman (In re Moseman)*, 436 B.R. 398, 408–09 (Bankr. E.D. Tex. 2010) (citing *Chastant*, 873 F.2d at 91).

Statement of Financial Affairs, Part 7, question No. 18 requires Defendants to disclose all transfers of property to anyone, other than in the ordinary course of business, within two years of the bankruptcy filing. Statement of Financial Affairs, Part 9, question No. 23 requires Defendants to disclose any property that they hold or control that someone else owns. The evidence at trial demonstrates Defendants are not firearm dealers and that any sales of firearms by them in the two years prior to the bankruptcy were not in the ordinary course of business.

Defendants sold firearms to Swift on July 31, 2018 and August 15, 2018, for a total of $13,000. Defendants did disclose the sale of firearms to other individuals but did not disclose the firearm sale to Swift on the Statement of Financial Affairs filed on April 1, 2019, the Amended SOFA filed on April 25, 2019, and the Second Amended SOFA filed on June 20, 2019. Further, Defendants also failed to disclose that they held possession of the firearms sold to Swift on the Statement of Financial Affairs filed on April 1, 2019, the Amended SOFA filed on April 25, 2019, and the Second Amended SOFA filed on June 20, 2019.

Plaintiff's counsel questioned Defendants concerning the undisclosed sale of firearms at the August 15, 2019, meeting of creditors. (Ex. 19 at pp. 16–17). Thereafter, Defendants filed the Third Amended SOFA on September 10, 2019, and disclosed on question 18 that they sold 3 guns to Swift for $13,000. Additionally, Defendants also disclosed on question No. 23 of the Third Amended SOFA that Defendants maintain custody of the firearms sold to Swift.

On June 8, 2018, Defendants sold their Gretsch guitar to Scott Wheeler for $1,925. On July 31, 2018, Defendants sold their Fender guitar to Bill Dickie for $768.99. On November 24, 2018, Defendants sold their VOX amplifier to Randy Zecchel for $797.99. On December 6, 2018, Defendants sold their Epiphone amplifier to Jeffrey Naumann for $153.98. On December 11, 2018, Defendants sold their CF Martin guitar to Charles Japhe for $1,765. Defendants did not disclose on question 18 of their Statement of Financial Affairs filed on April 1, 2019, or on any amendment that they sold and transferred their guitars and amplifiers within two years prior to the bankruptcy filing.

Defendants argue they disclosed funds received for the sale of the firearms from their son-in-law Swift as a gift, but the testimony presented to the Court shows the Schedules were amended to correct the transaction as a sale of firearms, the proceeds of which Defendants allege were used

to pay for normal and customary living expenses. In addition, Defendants sold various household items, including "some guitars and amps," to pay for normal and customary living expenses. Mrs. Busby testified that because of the outstanding judgment and charging order, Defendants had no income to pay normal living expenses, so they sold personal items such as music equipment to support themselves. Further, Defendants describe themselves as desperate people trying to do what they could to pay their living expenses when their income dried up. In sum, Defendants argue their failure to disclose the transfers was an inadvertent mistake—not an attempt to conceal the transfers. Defendants contend they corrected the mistakes on the schedules. Furthermore, Defendants state the transfers were made to financially support themselves.

Plaintiff argues that Defendants, with intent to hinder, delay, or defraud creditors transferred firearms to Swift within the one year prior to the bankruptcy filing. Defendants failed to disclose the transfer of firearms to Swift on their sworn schedules and statements filed on April 1, 2019. During the time of the transfers, Defendants were involved in litigation and were in fear of losing their assets. Defendants' transfer of firearms to a relative, Jeffrey Swift, creates the presumption of fraudulent intent and shifts the burden to Defendants to prove lack of fraudulent intent. *Chastant*, 873 F.2d at 91. Further, Defendants retained possession of the firearms and retained the benefit of same. Plaintiff argues Defendants' retention of the benefit of the transferred firearms is one of the badges of fraud discussed in *Pratt* and *Dennis*. *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 565–66 (5th Cir. 2005); *Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 701–02 (5th Cir. 2003). Consequently, Plaintiff argues the evidence at trial establishes that Defendants' transfer of firearms to Swift was done with the intent to hinder, delay, or defraud creditors and the Trustee, and Defendants' discharge should be denied pursuant to § 727(a)(2)(A).

Using the Fifth Circuit's test in *Pavy*, the Court finds Plaintiff met his burden under § 727(a)(2)(A) in establishing the requisite intent to hinder, delay or defraud a creditor.

*(1) Lack or Inadequacy of Consideration.* The evidence does not demonstrate a lack of consideration paid for the firearms.

*(2) A Familiar or Close Relationship Between the Parties.* The evidence is clear that the sale of the firearms was between family members.

*(3) Retention of Possession, Benefit, or Use of the Property in Question.* Plaintiff showed that at first Defendants did not disclose the sale of the firearms. Thereafter, Plaintiff showed that Defendants kept the firearms after the sale to Swift. Defendants maintain they kept the firearms for Swift because of the gun laws regarding the retention of firearms where Swift lived, but this explanation contradicts Defendants original explanation that the firearms were given to Swift as a gift. Further, Defendants' explanation of why they kept the firearms does not explain why the retention was not disclosed.

(4) *The Financial Condition of the Party Sought to Be Charged Both Before and After the Transaction in Question.* While the record does not reflect how the Defendants' overall financial condition changed, the record is clear that the Defendants benefitted financially from using the sale proceeds for personal items and expenses rather than for the payment to creditors.

(5) *The Existence or Cumulative Effect of the Pattern or Series of Transactions or Course of Conduct after the Incurring of Debt, Onset of Financial Difficulties, Or Pendency or Threat of Suits by Creditors.* As related herein, Defendants sold assets and made transfers without disclosing them on multiple amendments to their Schedules and SOFA. Defendants allege that they made these transfers because of their financial difficulties at the time of the transfers. Even if that is true, Defendants were still obligated to disclose the transfers for the benefit of the Court and creditors.

(6) *The General Chronology of the Events and Transaction Under Inquiry*. The Court finds this factor cumulative of factors 1–5 in this instance.

Applying the ***Pavy*** factors, the Court finds Plaintiff has met his burden under § 727(a)(2)(A) regarding the sale of firearms to Swift. Conversely, the Court does not find a violation of § 727(a)(2)(A) regarding the transfers of music equipment to third parties because the factors under ***Pavy*** were not proven in that there were no family members involved nor did Plaintiff prove there was any use or retention of the music equipment.

### B.     11 U.S.C. § 727(a)(2)(B)— Agreement to Share Commissions With Stephen Sanders

On the Petition Date, Debtors filed their Chapter 7 petition with their Initial Schedules and Initial SOFA.  Trustee argues Walter Busby and Stephen Sanders were involved in a partnership under the Agreement To Share Commissions as of the bankruptcy filing. The partnership and Agreement To Share Commissions was still in existence when the bankruptcy was filed on April 1, 2019. Trustee asserts Defendants failed to disclose the Agreement To Share Commissions on the Initial Schedules and Initial SOFA filed on April 1, 2019 and the Amended SOFA filed on June 20, 2019. Plaintiff maintains Defendants failed to disclose the partnership and Agreement To Share Commissions to conceal these assets from the Chapter 7 Trustee and creditors. Trustee posits Defendants acted with intent to hinder, delay, conceal or defraud their creditors from somehow collecting from the Agreement To Share Commissions or the partnership. The Court notes that the vast majority of all the acts Plaintiff complains were committed prior to the petition being filed. Therefore, the Court finds Plaintiff has not met his burden under § 727(a)(2)(B) which requires that property of the estate was fraudulently transferred. Although the Agreement To Share Commissions existed on the Petition Date, there is no evidence to show that property was transferred after the Petition Date.

### C. 11 U.S.C. § 727(a)(3)—Failure to Keep Financial Records Regarding the Agreement To Share Commission and the Related Partnership.

The Court may deny a defendant's discharge under § 727(a)(3) if plaintiff can demonstrate that defendant failed to keep records that "are those of creditors and that the [Debtor] is required to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *Koufman v. Sheinwald*, 83 F.2d 977, 980 (1st Cir. 1936); *Tex.Nat. Bank of Beaumont v. Edson*, 100 F.2d 789, 791 (5th Cir. 1939).

Under § 727(a)(3), the debtor's obligation is to keep records in a form that enables a creditor to ascertain the debtor's current financial condition and to follow her business transactions in the past. *See In re Juzwiak*, 89 F.3d 424, 426–27 (7th Cir. 1996) (denying discharge because there was no proof of payroll records). As such, the Court must examine the materiality of the missing business transactions. In doing so, a plaintiff must show by a preponderance of the evidence that the defendant failed to keep or preserve financial records and the failure to do so prevented a party from ascertaining the defendant's financial condition or business transactions. Once a plaintiff establishes a prima facie case, the defendant has the burden of establishing that his failure to keep adequate records was justified under all circumstances of the case. *In re Lee*, 309 B.R. 468, 477–78 (Bankr. W.D. Tex. 2004).

Section 727(a)(3) requires debtors present a full financial picture to the trustee, creditors, and Court. *Tow et al v. Henley (In re Henley)*, 480 B.R. 708, 781 (Bankr. S.D. Tex. 2012) (citation omitted). "The failure to maintain financial records justifies a denial of discharge." *Id.* (citations omitted). Notably, a trustee or a creditor need not prove any fraudulent intent by a debtor to deceive creditors; rather, mere negligence in failing to keep and produce records is sufficient to deny a debtor's discharge under § 727(a)(3). *Id.* (citations omitted).

The Court may consider if the inadequacy of the records is justified under the circumstances. ***First United Bank & Tr. Co. v. Buescher (In re Buescher)***, 491 B.R. 419, 438–39 (Bankr. E.D. Tex. 2013). Factors the Court may consider include: (1) the education, experience, and sophistication of the debtor; (2) the volume of the debtor's business; (3) the complexity of the debtor's business; (4) the amount of credit extended to the debtor in his business; and (5) any other factors the court may consider in the interest of justice. ***Id.*** (citations omitted).

Plaintiff argues the evidence presented at trial shows Defendants intentionally did not maintain any records concerning the Agreement to Share Commission or the partnership between Walter Busby and Stephen Sanders despite investing over $400,000 in the Agreement to Share Commissions and partnership. Defendants further failed to maintain adequate books and records concerning Turner Busby Development, LLC and R2W Development LLC.

Defendants maintain that Plaintiff has produced no evidence to refute or rebut the Defendants' allegation that Defendants have attempted several times to obtain certain books and records from Turner's office and from their CPA, without success. Defendants argue their testimony shows that Defendants and their bankruptcy counsel made several attempts to obtain copies of books and records of the Turner Busby Development, LLC, but neither Turner nor the CPA were cooperative in those requests. Defendants maintain that normal operating procedures required that Turner's office, either itself or through its CPA, keep the books and records of the Turner Busby Development, LLC. Defendants testified that to their knowledge, books and records were maintained. Moreover, Defendants posit that the Turner Busby Development, LLC assets are of minimal or no value. Consequently, Defendants argue the records for Turner Busby Development, LLC are (a) remote in time, and, therefore not required to be disclosed; and (b) have no current value, and, therefore are not material.

Walter Busby argues the alleged partnership regarding the Agreement To Share Commissions with Sanders was not a partnership and had no value to Defendants other than as an opportunity for future HUD and other real estate deals. Walter Busby contends that the commission paid Sanders was an expense item for which Walter Busby kept a record of the wire transfer. Busby argues that the payment for Sanders was an income item to Sanders for which he kept a record of the deposit. Consequently, no other documentation, books or records exist for this payment.

Walter Busby testified that he was a minor owner in R2W Development, LLC for about three months, more than two years before the bankruptcy petition was filed. Walter Busby states that R2W Development, LLC had no value and Busby gave up his interest up shortly (about three months) after it was issued to him. Walter Busby claims he had a no-value ownership interest initially in R2W Development, LLC and that it was not required to be disclosed, being more than two years prior to the petition date.

Sanders provided deposition testimony that was admitted in lieu of his live testimony. (Ex. 21). Sanders stated that the $393,000 payment to him was Walter Busby's financial commitment to him to pursue real estate deals with HUD that Busby was not qualified to do. (Ex. 21 at pp. 120–21). Sanders stated he and Busby had no legal partnership relationship, but rather an agreement and partnership to pursue HUD deals. (Ex. 21 at p. 128–37). Sanders also explains that he does not enter into partnerships at the development stage, and not until an equity partner is brought in to contribute capital to any real estate development. In sum, according to Walter Busby and Sanders, there was no partnership at the time Busby paid Sanders $383,000.00. Based upon the testimony of Sanders and Walter Busby, the Court finds Plaintiff has not met his burden to show a § 727(a)(3) violation as to the Agreement To Share Commissions because there does not appear to be a legal partnership between Sanders and Walt Busby.

Defendants admit they could have subpoenaed the records of Turner Busby Development, LLC but failed to do so. (ECF no. 60 at pp. 5–7). The trial of this case was continued multiple times as was the meeting of creditors. Defendants say they asked for the records on multiple occasions without success, but do not explain why they simply did not subpoena the records or request a Court order compelling production. The Court believes that this information should have been provided. The Court also finds that Defendants should have provided the books and records for R2W Development LLC as well because Walter Busby had an interest in an asset that was required to be disclosed in the Schedules. Therefore, Defendants' failure to provide the books and records for Turner Busby Development LLC and R2W Development LLC violates § 727(a)(3).

> **D.  11 U.S.C. § 727(a)(4)(A)—Undisclosed Income from eBay Sales; Transfers to Swift and Other Third Parties; and Undisclosed Assets.**

Section § 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account . . . ." Here, Trustee alleges Defendant made numerous omissions and false statements under oath including:

a.     Plaintiff asserts Defendants' failure to disclose the Agreement to Share Commissions with Sanders on their Initial Schedules and Initial SOFA filed on April 1, 2019, the Amended Schedules and Amended SOFA filed on April 25, 2019 and the Second Amended SOFA filed on June 20, 2019 are false oaths. Defendants assert such items are not false oaths, in that such payment to Sanders was not required to be disclosed, as it was neither within two years before the filing of the petition nor material, and because it was an "advance commission" on deals that never materialized.

b.     Plaintiff asserts Defendants' failure to disclose R2W Development, LLC on the Initial Schedules and Initial SOFA filed on April 1, 2019, the Amended Schedules and Amended

SOFA filed on April 25, 2019 and the Second Amended SOFA filed on June 20, 2019 are false oaths. Defendants assert such items are not false oaths, in that such entity was not owned by Busby within two years before the filing of the petition and was valueless.

c.      Plaintiff alleges Defendants' failure to disclose the firearm sale to Swift on the Initial Schedules filed on April 1, 2019, the Amended Schedules and Amended SOFA filed on April 25, 2019 and the Second Amended SOFA filed on June 20, 2019 are false oaths. Defendants assert that the misstatement on the Schedules was simply an oversight, when in fact it was disclosed as a gift rather than a sale. Defendants maintain that when the oversight was discovered, it was immediately corrected.

d.      Plaintiff asserts Defendants' failure to disclose transfers of their guitars and amplifiers made within two years of the bankruptcy filing on the Initial SOFA filed on April 1, 2019, the Amended Schedules and Amended SOFA filed on April 25, 2019 and the Second Amended SOFA filed on June 20, 2019 are false oaths. Defendants deny this allegation. Defendants assert these items were sold on the internet to pay for necessary and essential living expenses, and no intent to defraud or deceive any creditors or the trustee existed with respect to these transactions. Further, the failure to list them on the SOFA was simply an oversight that was immediately corrected when discovered.

e.      Plaintiff asserts Defendants' failure to disclose the gross income from eBay sales on the Initial SOFA filed on April 1, 2019, the Amended Schedules and Amended SOFA filed on April 25, 2019 and the Second Amended SOFA filed on June 20, 2019 are false oaths. Defendants assert that these items were sold on the internet to pay for necessary and essential living expenses, and no intent to defraud or deceive any creditors or the trustee existed with respect to these

transactions. Further, the failure to list them on the SOFA was simply an oversight that was immediately corrected when discovered.

f.     Plaintiff alleges Defendants have testified falsely during the meetings of creditors and in their deposition. Defendants deny this allegation and assert that all questions posed were answered truthfully to the best of Defendants' knowledge at that time. (ECF No. 37, Joint Pretrial Order at pp. 10–17).

In general,

> [t]he purpose of Chapter Seven of the Bankruptcy Code is to give individual debtors a "fresh start," and the heart of this goal is embodied in § 727's discharge provisions. *See, e.g.,* S. Rep. No. 989, 95th Cong., 2d. Sess. 7 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5793. "The discharge provisions require the court to grant the debtor a discharge of all his debts except for very specific and serious infractions on his part."

*In re Ichinose*, 946 F.2d 1169, 1172 (5th Cir. 1991).

Consistent with this general approach, the plaintiff has the burden of proving an objection to discharge under § 727(a)(4)(A). *Beaubouef*, 966 F.2d at 178. "The elements of an objection to discharge under § 727(a)(4)(A) must be proven by a preponderance of the evidence." *Id.* Those elements are: "'(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.'" *Pratt*, 411 F.3d at 566 (quoting *Beaubouef*, 966 F.2d at 178). "An omission of an asset can constitute a false oath." *Pratt*, 411 F.3d at 566.

Notably, "Bankruptcy Courts have not construed § 727(a)(4) generally to impose strict liability for the schedules and false statements." *Interfirst Bank Greenville, N.A., v. Morris (In re Morris)*, 58 B.R. 422, 427 (Bankr. N.D. Tex. 1986). Innocent mistakes and inadvertence are generally not sufficient to result in denial of a discharge. *See e.g., Mozeika v. Townsley (In re*

*Townsley)*, 195 B.R. 54, 65 (Bankr. E.D. Tex. 1996) ("The denial of a discharge under § 727(a)(4)(A) cannot be imposed where the false statement was the result of a simple or honest mistake or inadvertence. Rather, to sustain an objection to discharge under this section, the debtor must have willfully made a false statement with intent to defraud his creditors.").

Nevertheless, a debtor need not have acted deliberately to deceive. *Beaubouef*, 966 F.2d at 178 ("It makes no difference that [the debtor] does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.") (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (*per curiam*)). The requisite intent can be shown by establishing that the debtor acted with reckless disregard for the truth, which can be proven by circumstantial evidence. *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001) ("[S]tatements [made] with fraudulent intent–or reckless indifference to the truth . . . can be proven by circumstantial evidence."); *Beaubouef*, 966 F.2d at 178 ("[T]he existence of more than one falsehood, together with [the debtor's] . . . failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless indifference to the truth and, therefore, the requisite intent to deceive."); *accord, Ford v. Mellon Fin. Serv. Corp. (In re Ford)*, Civ. A. No. H-85-3551, 1986 WL 14997, at *4 (S.D. Tex. Dec. 18, 1986) ("When impeached, Debtor candidly admitted that expediency motivated the deception. Such reckless disregard for the truth is circumstantial evidence of the requisite fraudulent intent and will alone support denial of discharge."); *FDIC v. Sullivan (In re Sullivan)*, 204 B.R. 919, 942–43 (Bankr. N.D. Tex. 1997) ("A series of even innocent mistakes or omissions can constitute evidence of a pattern of reckless disregard for the truth . . . . Thus, courts look at the circumstances surrounding the omissions to determine whether they were intentional.") (citing *Morris*, 58 B.R. at 428).

The Court has recounted the number of § 341 meetings and amendments to Defendants' Schedules and SOFA. Although Defendants maintain the omissions on their Schedules and SOFA were unintentional and were corrected upon Plaintiff or the Chapter 7 Trustee identifying the omissions, the Court finds the cumulative number of omissions concerning. Moreover, the SOFA has specific questions that direct debtors to disclose items such as interests in businesses, transfers to family members, and income from all businesses. Defendants were given multiple opportunities to provide complete and accurate answers to these questions, and Defendants did this only at Plaintiff's insistence. The Court does not find Defendants' explanations credible that they simply forgot or did not understand their obligation to disclose. Defendants are sophisticated in business and educated. At best, Defendants exhibited a reckless disregard for the truth.

For example, DeAnn Busby disclosed $5,000 of gross income from operation of a business for 2018 in response to question 4 of the SOFA. DeAnn Busby testified her gross income for 2018 was comprised of sales on eBay. DeAnn Busby further testified that the business income for eBay sales was for "out of production items" acquired from stores and other items acquired from estate sales. (Ex. No. 23, p. 22, Lines 1–25, p. 23, Line 1). DeAnn Busby also testified she had access to the eBay records and PayPal records for 2018 before preparing the Schedules and SOFA filed on April 1, 2019. DeAnn Busby admitted at trial that the actual gross income for 2018 was $8,987.52, significantly more than the amount disclosed on the SOFA. The Fifth Circuit has found that any omission of income from a debtor's statements is material. *Beaubouef*, 966 F.2d at 178.

As mentioned, a debtor's fraudulent intent may be established through actual evidence of intent to defraud, or through the cumulative effect of many falsehoods in a debtor's schedules as evidence of a reckless disregard for the truth. ***Benchmark Bank v. Crumley (In re Crumley)***, 428 B.R. 349, 366–67 (Bankr. N.D. Tex. 2010) (citing ***Sholdra***, 249 F.3d at 383). Nevertheless, the

denial of a discharge—the "death penalty" sanction of bankruptcy—must not be undertaken lightly. *Crumley*, 428 B.R. at 367. (citing *Washington 1993, Inc. v. Hudson (In re Hudson)*, 420 B.R. 73, 100 (Bankr. N.D.N.Y. 2009)). Unquestionably, a debtor's paramount duty is to carefully consider all questions posed on the petition, schedules, and statements, and to verify the information listed is correct. *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593–94 (Bankr. N.D. Tex. 1991). Nevertheless, "[i]t may be close to impossible to produce Schedules and SOFAs that contain no mistaken information." *Cadle Co. v. Preston–Guenther (In re Guenther)*, 333 B.R. 759, 767–68 (Bankr. N.D. Tex. 2005)). In other cases, such as *Crumley*, reckless disregard for the truth was found where the Debtor prepared his SOFA's using "gest guesstimate" figures, and "never attempted to reconcile all of his sources of income prior to trial." 428 B.R. at 367 (denying discharge to the husband under § 727(a)(4)(A) for reckless disregard).

Defendant could have and should have exercised a similar level of diligence and care in examining her personal bank accounts and filling out her Schedules and SOFAs. Mrs. Busby stated at trial that she did not think it material enough to correct her eBay sales income because she did not think of it as a business. That said, the questions on the SOFA require complete and full disclosure of all sources of income. Defendant testified she did not believe she needed to consult any other records to satisfy her income reporting requirements. The Court does not find this testimony credible. While the Court does not find these actions constitute actual fraudulent intent, at a minimum Defendant's actions—or lack thereof—display a reckless disregard for the truth.

Accordingly, the Court finds Defendants violated 11 U.S.C. § 727(a)(4)(A) by making a false oath or statement regarding DeAnn Busby's wage income from eBay sales. Further, the number of omissions in response to direct questions on the Schedules and SOFA demonstrates a reckless disregard for the truth. Therefore, Defendants' discharge is denied under § 727(a)(4)(A).

E.      11 U.S.C. § 727(a)(5)—Transfers to Sanders.

Finally, § 727(a)(5) provides that a debtor will be denied a discharge where the debtor fails to explain satisfactorily the loss of assets or deficiency of assets to meet the debtor's liabilities. Section 727(a)(5) does not require specific allegations of fraud but does require that the plaintiff identify which assets have been lost. *See Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994) (denial of discharge warranted on fraudulent withholding of information). Plaintiff bears the initial burden to show some evidence that specific assets were lost, at which point the debtor must satisfactorily explain what happened to the assets. *See Chalik*, 748 F.2d at 619 (denial of discharge warranted for failure to explain loan of $130,000 to debtor). The debtor's burden is to explain satisfactorily to the Court what has happened because the debtor has access to the operative facts. *Poolquip-McNeme, Inc. v. Hubbard (In re Hubbard)*, 96 B.R. 739, 742 (Bankr. W.D. Tex. 1989).

In this case, Plaintiff argues Defendants have failed to explain what happened to the over $400,000 they paid to Sanders for the Agreement To Share Commissions and purported partnership. Moreover, Plaintiff notes Defendants testified they have no documentation concerning the Agreement To Share Commissions and purported partnership. By way of comparison, the Fifth Circuit affirmed the denial of discharge under § 727(a)(5) when a debtor could not explain the "disappearance" of $19,586.83. *In re Reed*, 700 F.2d 986 (5th Cir. 1983). In *Reed*, the debtor explained he had used cash to pay for business and household expenses and lost an unspecified amount gambling in Las Vegas. *Id.* at 993. Plaintiff argues Defendants provided no records at trial to make sense of Agreement To Share Commissions and partnership with Sanders. "Vague and indefinite explanations" that are "uncorroborated by documentation are unsatisfactory" to defeat a cause of action under § 727(a)(5). *Chalik*, 748 F.2d at 619 (*citing In re Reed*, 700 F.2d at 993).

In this case, Defendants contend there was not a formal relationship with Sanders and no documents exist as to the alleged partnership with Sanders. (Ex. 21 at pp. 72, 100, 128–29). Sanders corroborated Walter Busby's testimony that he paid Sanders $393,000.00 on future commissions for prospective HUD deals. Sanders also explained that this type of arrangement was typical for him in that there would be no documentation at the early stages of attempting to formulate a commercial development. The evidence is clear where the money went—Busby paid Sanders a commission for $393,000.00 as verified by the wire transfer Busby provided. While the transaction may be viewed as unorthodox or unusual, there is little doubt that Walter Busby paid Sanders and that there is no legal relationship between them as to this transaction. There is nothing vague or indefinite about Defendant's explanation. While the transfer itself may be actionable under other provisions of the Bankruptcy Code, it is not a § 727(a)(5) violation.

## CONCLUSION

For the reasons stated herein, the Trustee's Complaint pursuant to 11 U.S.C. § 727 is GRANTED IN PART and DENIED IN PART. Specifically, the Trustee's Complaint pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(4)(A) is GRANTED. Trustee's Complaint pursuant to 11 U.S.C. § 727(a)(2)(B) and (a)(5) is DENIED. Therefore, Defendants' discharge pursuant to 11 U.S.C. § 727(a) is hereby DENIED. All other relief is DENIED.

A separate Judgment will be entered in conformity with this Memorandum Opinion.

# # #